1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO JOHNSON,<br><br>                              Plaintiff,<br><br>         vs.<br><br>SUN COMMUNITY FEDERAL CREDIT<br>UNION,<br><br>                              Defendant. | CASE NO. 11 CV 2112 LAB (WVG)<br><br>**ORDER DISMISSING CASE FOR<br>LACK OF SUBJECT MATTER<br>JURISDICTION** |

This is a wrongful termination case.  Orlando Johnson alleges that he was mistreated and fired as Vice President of Lending for Sun Community Federal Credit Union because he is black and more capable than his superior.  Now before the Court is Sun's motion to dismiss three of Johnson's seven claims.  They are: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and California's Fair Employment and Housing Act; (2) negligent supervision; and (3) intentional infliction of emotional distress.

Johnson's Title VII claim is his only federal claim and the basis for the Court's jurisdiction.  (SAC ¶¶ 5–6.)  If it fails, only state claims will remain, and the Court will decline to exercise jurisdiction over them.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1173 (9th Cir. 2007); *Acri v. Varian*, 114 F.3d 999, 1000 (9th Cir. 1997); 28 U.S.C. § 1367(c).

//

I.   **Background**

Johnson's basic story is that the white Chief Financial Officer of Sun, Dale Johnson, with the support of the white Chief Executive Officer, Harold Walk, sought to terminate Johnson because he is black and has superior education and experience.  (SAC ¶ 22.)  This is almost entirely an inference that Johnson draws from various instances of alleged mistreatment once Dale Johnson was hired.  He alleges very few direct facts to suggest that his treatment by Dale Johnson and ultimate termination were race-based.

What are those alleged instances of mistreatment?  The Court will list them, in no particular order:

- •   Dale Johnson persuaded Walk to send harassing emails to Johnson, criticizing his performance.  (SAC ¶¶ 20(c), 37.)
- •   Dale Johnson stripped Johnson of a planning role in the construction of a new Sun branch in Brawley, California, even though he had years of relevant experience.  (SAC ¶¶ 20(d), 38.)
- •   Dale Johnson prohibited Johnson, despite his experience, from providing input into Sun's commercial lending practices.  (SAC ¶ 20(e).)
- •   Walk ignored Johnson's multiple requests to take paid leave he had earned.  (SAC ¶ 32(a).)
- •   Decisions that Walk and Dale Johnson made jointly were never communicated to Johnson.  (SAC ¶ 20(b).)
- •   Johnson was excluded from an audit of Sun by the National Credit Union Administration, even though he had participated in the audit process when previously employed by Sun as Internal Audit Manager.  (SAC ¶ 20(f).)
- •   Walk and Dale Johnson inflated Johnson's loan goals as Vice President of Lending to make it appear to Sun's Board of Directors that he was underperforming.  (SAC ¶¶ 24–25, 43.)

//

• Walk didn't allow Johnson to work with local realtors in performing his job duties.  (SAC ¶ 32(b).)

• Johnson was denied access to upper management at Sun.  Rather than report to Walk and the Board of Directors, Dale Johnson required that Johnson report directly to him.  (SAC ¶¶ 20(h)-(i), 39.)

• Walk and Dale Johnson obstructed Johnson's marketing efforts by refusing to show up for meetings he scheduled with vendors.  (SAC ¶ 32(c).)

Several of Johnson's allegations imply, indirectly, that Dale Johnson is racially biased, and that his biases were a motivating factor in his treatment of Johnson.  Again, in no particular order:

• After Dale Johnson was hired, he immediately cancelled regular senior management meetings that included Johnson and a Hispanic woman, and met instead with Walk and Sun's white lawyer.  (SAC ¶ 20(a).)

• Dale Johnson stripped Johnson of his responsibilities for facilities administration and hired a white person as Facilities Manager.  (SAC ¶¶ 20(g), 38.)

• Dale Johnson insisted that only he attend the funeral service for Walk's mother, which guaranteed that no minorities from Sun would be there.  (SAC ¶ 20(j).)

• When Johnson complained to the Acting Human Resources Manager about racial discrimination, Dale Johnson appointed himself Acting Human Resources Manager and ignored Johnson's complaint.  (SAC ¶ 20(k).)

• Dale Johnson spoke down to Johnson and referenced his ancestry in an insulting manner.  (SAC ¶ 23.)

//

1  

2  

3

•  Dale Johnson diminished the responsibilities of Michelle Sampson, a black woman who had been Assistant Vice President of Card Services and Facilities.  (SAC ¶¶ 26, 42.)

4  **II.    Legal Standard**

5      The premise of Johnson's opposition to Sun's motion to dismiss is that the applicable

6  pleading standard comes from *Conley v. Gibson*, 355 U.S. 41 (1957).  In *Conley*, the

7  Supreme Court held that "a complaint should not be dismissed for failure to state a claim

8  unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

9  claim which would entitle him to relief."  *Id.* at 45–46.  Johnson couldn't be more wrong.  The

10  Supreme Court retired the "no set of facts" standard, and effectively abrogated *Conley*, in

11  *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 563 (2007).  *Twombly* raised the bar, requiring

12  that a complaint's factual allegations "must be enough to raise a right to relief above the

13  speculative level."  *Id.* at 555.  The Supreme Court followed up on *Twombly* in *Ashcroft v.*

14  *Iqbal*, 556 U.S. 662 (2009).  Recognizing its holding in *Twombly* that a complaint must

15  contain sufficient factual matter to make it facially plausible, the Supreme Court held that a

16  claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

17  draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

18  at 678.  This plausibility standard doesn't amount to a *probability* requirement, "but it asks

19  for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

20      Johnson argues that *Iqbal* doesn't apply to motions to dismiss brought under Rule

21  12(b)(6).  That's also wrong.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir.

22  2011); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th

23  Cir. 2011).  Not only does *Iqbal* apply, but virtually every district court decision that considers

24  a motion to dismiss under Rule 12(b)(6) either leads with or relies on it.  *See, e.g.*, *In re Sony*

25  *Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d

26  1077, 1086 (S.D. Cal. 2010).  *Iqbal* is an absolutely seminal case in the area of federal civil

27  procedure.  *See generally* Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play*

28  *on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1 (2010).

1    Johnson also argues that "the Federal Rules do not draw distinctions between

2  pleading facts, ultimate facts, or conclusions of law."  (Opp'n Br. at 8.)  Completely false.

3  The Supreme Court held in *Iqbal* that "the tenet that a court must accept as true all of the

4  allegations contained in a complaint is inapplicable to legal conclusions."  556 U.S. at 678.

5  Indeed, a complaint that simply offers labels and conclusions, or a formulaic recitation of the

6  elements of a cause of action, is inadequate.  *Id.*  "Nor does a complaint suffice," the

7  Supreme Court held, "if it tenders naked assertions devoid of further factual enhancement."

8  *Id.* (internal quotations omitted).  *See also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

9  1136, 1139 (9th Cir. 2003) (holding that a court needn't "necessarily assume the truth of

10  legal conclusions merely because they are cast in the form of factual allegations").[1]

11  **III.   Discussion**

12    In light of the above pleading standards from *Twombly* and *Iqbal*, has Johnson

13  sufficiently alleged that his treatment and termination by Sun was race-based?   His

14  arguments that he has aren't helpful; they all start with the premise that *Conley* applies and

15  *Twombly and Iqbal* are irrelevant.

16    Title VII makes it unlawful for an employer to discriminate against an employee

17  "because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a).  In order to establish a Title

18  VII violation, Johnson must first establish a prima facie case of discrimination by showing

19  that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he

20  experienced an adverse employment action; and (4) similarly situated individuals outside his

21  protected class were treated more favorably, or other circumstances surrounding the

22  adverse action give rise to an inference of discrimination."  *Fonseca v. Sysco Food Servs.*

23  *of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quoting *Peterson v. Hewlett-Packard Co.*,

24

25    [1] This isn't terribly relevant to the matter at hand, but the Court should point out a
   discrepancy in Johnson's pleadings that is equally as careless as his arguments regarding
26  the appropriate pleading standard.  In his complaint, he says he "was laid off by the Central
   Union High School District due to state-wide budget constraints" before being approached
27  by Walk to return to Sun.  (SAC ¶¶ 12–13.)  In his opposition brief, however, he says that
   "when the economy tailspinned, Plaintiff voluntarily left his position with the school district,
28  whereupon he was immediately solicited for reemployment with Defendant by Harold
   Walk . . . ."  (Opp'n Br. at 5.)

358 F.3d 599, 604 (9th Cir. 2004)).  This, of course, is the beginning of the burden-shifting framework for discrimination claims first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

There's no doubt that Johnson properly alleges elements (1) through (3).  The question is whether he alleges adequate facts to give rise to an inference of discrimination on the part of Dale Johnson.  It's not nearly enough, under *Twombly* and *Iqbal*, that Dale Johnson happens to be white and that Johnson believes he was substantially mistreated by him.  Were the rule otherwise, there would be no way for an employer to terminate a minority employee without inviting a Title VII lawsuit.  Employers are allowed to treat employees—including minority employees—unreasonably or unfairly; they just can't do so on the basis of the employees' race (or some other protected characteristic).  Or, to put it another way, Title VII does not forbid Dale Johnson from being power-hungry or authoritarian as the Chief Financial Officer of Sun.  It does not forbid him from having an inchoate grudge against Johnson that led him to undermine Johnson's role at Sun.  What, then, is Johnson's evidence that his treatment at the hands of Dale Johnson and his ultimate termination were race-based?

First, Johnson claims that Dale Johnson diminished the responsibilities of Michelle Sampson, another black employee of Sun.  He offers no additional evidence, however, that Sampson's treatment was race-based, and even if he could, his claim that his own treatment was race-based would still be completely speculative.  He also offers no evidence that non-black employees similarly situated to Sampson, or to himself, were treated more favorably than they were.  He simply wants the Court to infer that because Dale Johnson effectively demoted another black employee of Sun he had it out for black employees generally.  That is not a reasonable inference under *Iqbal*; it is a completely speculative inference based on very narrow and selective information.

Second, Johnson claims that Dale Johnson made certain decisions in his capacity as Chief Financial Officer that had the effect of excluding minorities.  He cancelled regular senior management meetings to meet privately with Walk and Sun's lawyer, and he insisted

1    that only he attend the funeral service for Walk's mother.  Here, again, the inference that

2    Johnson acted with a racial motive is completely speculative.  It's very likely the case

3    (Johnson does not suggest otherwise) that non-blacks were also excluded from the senior

4    management meetings and the funeral service.  Moreover, Johnson alleges no facts to

5    support the inference that Dale Johnson harbored such extreme racial prejudice that he was

6    willing to marginalize *all* subordinate employees just to marginalize the black ones.

7            Third, Johnson alleges that Dale Johnson spoke down to him and insulted his

8    ancestry.  These allegations, however, are suspiciously vague considering their seriousness.

9    If Dale Johnson did in fact vocalize racial prejudice in conversations with Johnson, the Court

10   has to assume Johnson would remember more than the mere fact that his ancestry was

11   insulted.  He would remember, roughly, when the statements were made, where they were

12   made, and what they consisted of — and he would incorporate those details into his

13   complaint.  The Court simply cannot reasonably infer that because Dale Johnson referenced

14   Johnson's ancestry in an insulting manner his entire relationship with Johnson was motivated

15   by racial prejudice, and that, as Johnson put it, Dale Johnson "masterminded the elimination

16   of minorities at SCFCU."  (Opp'n Br. at 5.)

17           Johnson's race is only part of his theory of treatment and termination at Sun.  His *full*

18   theory is that Dale Johnson was determined from the outset to undermine him because he

19   is black *and because* he has more education and experience.   (SAC ¶¶ 22, 36.)  Johnson

20   has certainly painted a picture of harsh treatment by Dale Johnson, but that's very different

21   from painting a picture of racial discrimination.  *See Odima v. Westin Tucson Hotel Co.*, 991

22   F.2d 595, 602 (9th Cir. 1993) ("The district court must not substitute its own judgment about

23   whether the employment decisions were wise, or even fair, for that of the employer.").

24   Considering all of Johnson's allegations, and the relevant pleading standards (which he

25   fundamentally misunderstands), the Court finds that Johnson hasn't pleaded adequate facts

26   to establish a prima facie case of racial discrimination under Title VII.  Instead, the facts he

27   does allege still leave the Court guessing as to whether Dale Johnson was truly motivated

28   //

1    by racial prejudice, and thus give rise only "a sheer possibility that [Sun] has acted

2    unlawfully." *Iqbal*, 556 U.S. at 678.  That is inadequate.

3         Finally, *the Court* is the one separating Johnson's evidence of general mistreatment

4    from his evidence that Dale Johnson was motivated by racial prejudice, this is an attempt to

5    focus in on what the actual basis of a Title VII claim could be.  Johnson himself doesn't make

6    that attempt.  In his opposition brief, for example, he says that he "bases his claim on the

7    color of his skin, the arrival of Dale Johnson, and the chaos that followed Johnson's arrival

8    — all designed to cause Plaintiff to quit."  (Opp'n Br. at 5.)  He says that "any action,

9    personnel-speaking or otherwise, when designed to prompt a quit, can be taken, and here

10   was, as actions racially motivated to eliminate Plaintiff, a black, from the workplace."  So,

11   even though Johnson tries to present independent evidence that Dale Johnson was

12   motivated by racial prejudice, his Title VII claim, on *his own* pleading, relies simply on the

13   fact that Dale Johnson is white, the fact that Johnson is black, and the allegation that Dale

14   Johnson mistreated him.  Again, *Twombly* and *Iqbal* don't open the gate for a claim that's

15   argued so speculatively.

16        For the above reasons, Johnson's Title VII claim is **DISMISSED WITH PREJUDICE**.

17   **III.    Conclusion**

18        With Johnson's Title VII claim out of the picture, his six remaining claims arise under

19   state law.  The Court declines to exercise supplemental jurisdiction over those claims, and

20   therefore **DISMISSES** the remainder of this case **WITHOUT PREJUDICE**.

21        **IT IS SO ORDERED**.

22   DATED:  April 18, 2012

23

24        **HONORABLE LARRY ALAN BURNS**
     United States District Judge

25

26

27

28

- 8 -